UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Stephanie Sims,                                        Civ. No. 18-484 (PAM/SER)

                Plaintiff,

v.                                                     **MEMORANDUM AND ORDER**

Met Council, and Metro
Transit Authority,

                Defendants.

This matter is before the Court on Defendants' Motion for Summary Judgment. For the following reasons, the Motion is granted.

**BACKGROUND**

Plaintiff Stephanie Sims was a bus driver for Defendant Metro Transit from September 2013 until July 2017. (Sims Dep. (Ellingstad Decl. Ex. 1) (Docket No. 49-1) at 43.) On Wednesday, January 18, 2017, she walked into the drivers' lounge at one of Metro Transit's bus garages. (Id. at 81.) Playing on the television was a Netflix series called "Luke Cage." Sims observed nudity on the screen and demanded that the other drivers stop playing the show. (Id. at 81, 84.) She claims that her co-workers argued with her briefly before turning off the television. (Id. at 85-87.) She also contends that she left the lounge and returned, and the show was again playing on the television. (Id. at 90-91.) Her co-workers turned it off after she again complained. (Id. at 111.) It is undisputed that the program in question contained two scenes with nudity, each lasting less than a minute. (Ellingstad Decl. Ex. 2 at 16.)

Sims now contends that when she arrived at work on the day of the incident, she also overheard a conversation between two other employees, one of whom used the word "boner." (Sims Dep. at 70.) She does not dispute that the conversation was not about her or directed toward her, nor does she dispute that when she complained to a manager, the employee was immediately counseled about his use of language. (Id. at 73, 74.) She contends that another employee referred to his "johnson" in her presence that day as well but admits that the manager present for that alleged conversation immediately told the employee to stop. (Id. at 76-77.)

Sims reported the TV-show incident to several managers, all of whom told her they would address the situation. (Id. at 99-101.) They immediately ensured that the television in the lounge was no longer able to connect to the streaming device and that the streaming device was ultimately removed from the garage. (Hill Dep. (Ellingstad Aff. Ex. 3) at 21.) In addition, a manager invited Sims into her office and provided her with Met Council policies regarding sexual harassment and the Union's phone number. (Sims Dep. at 101.) Moreover, the manager of the employee who brought the streaming device counseled him in a one-on-one session, and the other employees present were spoken to about respectful workplace policies and the prohibition on retaliation. (Bailly Dep. (Ellingstad Aff. Ex. 7) at 55.)

Sims contends that a co-worker called her at home that evening and told her that the drivers in the lounge were angry with her and planned to confront her. (Sims Dep. at 127.) Sims worked without incident on Thursday, but on Friday two of her co-workers again reported that other employees had threatened Sims and were mad at her. (Id. at 145-148.)

2

She reported the alleged threats to her supervisor, who offered Sims several suggestions to help her feel safe. (Id. at 158.) Sims rejected all of the suggestions, and eventually submitted a doctor's note that she could not have any contact with any Metro Transit employees. (Ellingstad Aff. Ex. 14.) As a result, Metro Transit terminated her employment. This lawsuit followed.

Sims raised six causes of action against Defendants Metro Transit, the Met Council, and Amalgamated Transit Union Local No. 1005. In October 2018, the Court granted the Union's motion to dismiss and dismissed Sims's claims against the Union with prejudice. (Docket No. 29.) Thus, the only two remaining Defendants are Metro Transit and the Met Council.

Count I of the Complaint claims termination in violation of the MHRA and Title VII against Metro Transit and the Met Council. Count II claims retaliation, but does not list the statutory basis for the claim or the Defendants against whom it is brought. Count III alleges "negligence infliction of emotional distress" against "Defendants and Metro Transit." Count IV claims respondeat superior liability against Metro Transit and the Met Council. Count V claims vicarious liability as to all three Defendants, arguing that "Defendants" acted within the scope of their employment so their actions should be imputed to Metro Transit and the Met Council. Count VI claims that Defendants were negligent in handling her complaint. Plaintiff's opposition brief does not mention either her negligence claim or her vicarious liability claim, appearing to concede that Defendants' Motion should be granted as to these claims.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that "may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**A.  Sexual Harassment**

Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).[1] Prohibited discrimination can include "requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). A workplace is hostile or abusive when it is "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the

---

[1] Sexual harassment and retaliation under Title VII are analyzed the same as those claims brought under the MHRA. Portner v. CICA SA-BO, Inc., 357 F. Supp. 2d 1172, 1177 (D. Minn. 2005) (Davis, J.).

4

victim's employment and create an abusive working environment.'" Id. (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 67 (1986)). The "critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Id. at 25 (Ginsburg, J., concurring). The severity of the harassment is judged both objectively and subjectively: "[s]o long as the environment would reasonably be perceived, and is perceived, as hostile or abusive," it is actionable. Id. at 22.

Sims's workplace-harassment claims fail for multiple reasons under these standards. First, her exposure to two brief scenes of nudity on a television in the drivers' lounge cannot "reasonably be perceived . . . as hostile or abusive." Id. There is no dispute that Sims found the scenes offensive and believes that they created a hostile work environment, but her subjective beliefs are only part of the equation. Considering all of the circumstances in the light most favorable to Sims, and even taking as true her contentions regarding the other unrelated comments she allegedly heard that day, she was simply not subject to severe or pervasive harassment.

And even if the brief incidents at issue here could somehow arise to objectively serious or pervasive harassment, Sims's claim fails because there is no indication that she was subject to something to which male drivers were not exposed. The TV was on for all drivers, male and female, to see. The brief nude scenes were not directed at Sims because she was a female. Poor taste does not amount to prohibited sexual harassment.

And finally, as Defendants point out, a Title VII plaintiff must also establish that her employer failed to take prompt remedial action when informed of the allegedly

5

harassing behavior. Carter v. Chrysler Corp., 173 F.3d 693, 702 (8th Cir. 1999). Sims cannot make this showing here. The evidence, in fact, demonstrates the opposite: to a person, Sims's managers responded to her complaints, attempted to comfort her, and took immediate action. Sims contends that Metro Transit was slow to respond to her complaints that she felt threatened, but there is no dispute that Sims viewed the offensive material on a Wednesday, she told managers about her co-workers' alleged threats on a Friday, and Metro Transit began investigating the following Monday. (Ellingstad Aff. Ex. 2 at 8.) Defendants' actions here comport with their duties under Title VII.

**B.      Retaliation**

To establish retaliation in violation of Title VII or the MHRA, Sims must demonstrate that she engaged in protected activity and suffered an adverse employment action as a result. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013) (noting that Title VII retaliation plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer").

There is no dispute that Sims engaged in protected activity by complaining to her supervisors about alleged sexual harassment and other conduct. Nor is there a dispute that Sims ultimately suffered an adverse employment action in the form of her termination from employment. But a retaliation claim requires more than this. To prevail, Sims must show that her complaints caused her termination. She has again utterly failed to come forward with any evidence in this regard.

Rather, the evidence shows that Sims was fired only after her psychologist opined that Sims could have no contact with any Metro Transit employee and could not return to

6

work. (Ellingstad Decl. Ex. 14.) Indeed, Metro Transit initially placed Sims on paid administrative leave while it attempted to determine how she could return to work and feel safe doing so. Metro Transit ultimately held Sims's job open for months. There is no evidence that Sims's harassment complaint was the but-for cause of Metro Transit's decision. Her retaliation claim fails.

## C. Negligent Infliction of Emotional Distress

In her opposition to the Motion on her negligent-infliction claim, Sims relies on Kansas law. But the law of other states is not relevant or even particularly persuasive when evaluating a claim that arises under Minnesota law.

And Minnesota law is clear: a claim for negligent infliction of emotional distress requires Sims to establish that she "(1) was within a zone of danger of physical impact; (2) reasonably feared for her own safety; and (3) suffered severe emotional distress with attendant physical manifestations." K.A.C. v. Benson, 527 N.W.2d 553, 557 (Minn.1995). The "zone of danger" means that the plaintiff is "in some actual personal physical danger caused by defendant's [conduct]." Id. at 558. Whether Sims was within a zone of danger is an objective inquiry. Id.

Sims has not established that she was within a zone of danger of physical impact at any time. The third-party related threats are not attributable to any Defendants' actions or lack thereof and in any event cannot form the basis of a claim for negligent infliction of emotional distress. See id. at 559 ("[A] remote possibility of personal peril is insufficient to place plaintiff within a zone of danger for purposes of a claim of negligent infliction of emotional distress."); see also Ihle v. MCC Behavioral Care, Inc., No. C0-97-170, 1997

7

WL 471317, at *1 (Minn. Ct. App. Aug. 19, 1997) (yelling and threats do not satisfy zone-of-danger requirement). And the comments Sims's fellow employees made to her when she asked that the TV program be turned off are similarly not sufficient to have put Sims in any actual personal physical danger—even in the light most favorable to her, the evidence shows only that her fellow employees argued with her and one made a "chopping" motion with her hand. Sims has utterly failed to raise a genuine issue of fact as to her negligent-infliction claim.

**CONCLUSION**

Sims has failed to raise any genuine issues of material fact on any of her claims. Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendants' Motion for Summary Judgment (Docket No. 47) is **GRANTED**; and

2. This matter is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 22, 2019

*s/ Paul A. Magnuson*
PAUL A. MAGNUSON
United States District Court Judge